Mr. Woodward, whenever you're ready. Good morning, Your Honor. May it please the court, I'm counsel Larry Woodward. I'm here on behalf of Mr. Fuller to ask the court to, for a variety of reasons, to remand this case to the district court for a new trial. I think Judge Jackson probably said it best when he described the discovery process on the record as a sloppy mess and I think that was a very apropos description of what occurred here, that it started bad, it was bad all through the trial and it ended even worse and let me start with the motion for a continuance. I certainly understand long, long experience with this court and in the district court, the vast amount of discretion that a But I also understand that when you have lawyers that come in and say, Judge, I'm not ready. I can't try this case. I can't be prepared. Mr. Fuller is before the court facing multiple charges that would require. There was a disclosure schedule in this case. There was, Your Honor. There's a standard. Are you saying the government breached it? Other than your Brady claim, were you saying that they breached it? No, Your Honor. I'm saying there was five days I think they disclosed and the record indicated it was 1,800 pages of material. But it was delivered under the timing of the discovery schedule, wasn't it? It was. Yes, ma'am. You agree to that? You agree to it, Rob. I'm sorry. The trial counsel, trial counsel, I didn't try the case. The trial counsel agreed to that discovery order. There's no question about that but, you know, the discovery order is a vehicle to allow counsel to be prepared. It should not be a sword when counsel come in and say, we're not ready to try this case. But didn't the court make a number of concessions, work with the counsel when he said he was unprepared? Your Honor, they did make some I could tell at least from reading the transcript what's going on at this trial. There's a witness sitting on the witness stand testifying. The defense counsel's up there like this, reading, trying to find the right pages. There were a number of times during the trial, as the court saw, they didn't even have all of the pages. They had to take a break and get them during the breaks. Which is even worse when the defendant's whispering in your ear, telling you what to do. But I mean, we've all experienced that in trial cases. Well, of course, Your Honor, we have. But, you know, again, I believe the standard should be that the right to counsel means a right to a prepared counsel. And as you're well aware, we'll get to it. But what doesn't counsel have to come in and show a little more than we're not prepared? Well, Your Honor, I think they did in this case. The counsel came in, as you recall, on June the 30th, I believe they made an oral motion saying they could be prepared. And one of the counsel expressed some concern about the illness with the family member at that point. Then they get that afternoon at four or five  Then they file a written motion for a continuance and set forth that just says we simply can't get ready to try this case. And again, Judge Jackson appointed these counsel. He supervises these counsel. I know that expediency is not the hallmark of justice. But it's not just that they said they weren't ready for this trial. The judge described it best. It was a sloppy mess. They weren't ready. They clearly weren't ready. I cited. The government pinged me a little bit in their reply brief for kind of string citing a bunch of places in the record of trial in my brief. There are dozens and dozens of occasions where both counsel are objecting. We don't have the papers. Who's going to do the cross-examination? There's even one occasion in the trial where one lawyer starts cross-examining a witness and says, Judge, I'm overwhelmed by this. Will you let my co-counsel finish the cross-examination? So again, it's one thing to have pre-trial jitters and somebody would say, you know, I've tried a lot of cases. I guess every case I've ever tried, I could have used more time if I had it. But this is not just somebody saying I'm not ready and then you get to the trial and everything goes swimming and smoothly. That's not what happened. Can you point to any specific prejudice that resulted from the lack of preparation that wouldn't have been cured by the new trial that the government proffered? Well, Your Honor, to answer that question, I believe the point to a specific, and you saw in my argument, it's more like you know it when you see it. You're unprepared throughout the entire trial. They come in every day. Lawyers don't show up with the right files. They have to leave the courthouse. Don't you have to identify some specific prejudice? Well, yes, sir. And I think, again, my argument would be that the overall record of trial, that doesn't get me there. I don't have a, I can't sit here and say, well, if they'd had more time to spend on this witness, they might have convinced the jury that it wasn't credible. But again, I didn't describe this trial as a sloppy mess. The trial judge did, specifically twice. So that's not my words. That's his words. They're also his words that on the discovery that day, they asked for the continuance. And I'm quoting Judge Jackson, quote, there'll be hell to pay if they don't get everything. Well, they didn't get everything. And we know that, and we're standing here. That's another one of my arguments that I'd like to move on to. Again, I understand that the Brady claim, which is sort of mixed in with the ineffective assistance counselor claim is a high standard for me. But the government, the defense lawyers asked for a new trial in August. They specifically asked for a new trial, in their Rule 29 motion. They made a Rule 33 motion. Government objects to it. The government then discloses more material on several different occasions, I think late in August and September. Defense counsel says then, which they didn't really claim at first, that the government and the prosecutors were acting, you know, intentionally trying to hide stuff. If anybody would think about it for five seconds, if the prosecutors in this case had been acting intentionally and wanted to hide the material and not disclose it, then they would have never given them the stuff after the verdict. Could I ask you, what does this attach to? Which of your arguments are you making now? I'm making the argument, Your Honor, about the ineffective assistance for advising Mr. Fuller to turn down a new trial, because the defense launched off on this. And the record is clear that he was advising to turn down a new trial? Well, no, it's not really even clear. It's a record. It's clear that his counsel filed a motion, and Ms. Stanton said, I believe, at page 2399 through 2400, that, you know, for reasons I can't tell the court, we don't want a new trial after Judge Jackson went through a colloquy with her about, wouldn't a new trial cure everything? Wouldn't a new trial handle all of your problems? The judge never asked the defendant anything about that. Isn't this sort of in the classic paradigmatic case of why these claims usually come up on collateral review, so there can be an evidentiary hearing to find out what happened? Well, I think not, Your Honor, for the following reason. There, as I can find, and I'm sure I'll correct it if I'm wrong, there's not a single case in the government conceded in their brief, the remedy for a Brady violation is not dismissal. But the motion wasn't limited to the Brady violation. I thought the motion for dismissal wrapped together a Brady violation, all other kinds of prosecutorial misconduct. I think there was an argument of untruth by the government. I mean, there was a lot in that motion. It wasn't just a Brady violation. And perhaps, so Your Honor, I didn't read it that broadly, but when we got to Judge Jackson on the last hearing, which I think was February 9th, the other thing that never happened is, you know, Mr. Fuller's standing there convicted of all these offenses facing mandatory life. The judge never asked him a word about it. We don't let, about, do you understand? Do you understand that you're right to a new trial? They talk to the lawyer. We do colloquies with defendants. I can't go into court and say my defendant's pleading guilty. The judge talks to him. He asked him when he was changing counsel. Ms. Crump withdrew. Mr. Fuller, do you understand? Are you okay with Ms. Crump withdrawing and just going forward with Ms. Stanton? We get to the government. I'm sorry, I don't understand what your argument is and how it relates to an argument in your brief. Could you help me with that? Yes. Yes, Your Honor. My argument, as you can see, one of my brief arguments is that the overall trial conduct of everybody deprived Mr. Fuller of a fair trial. And he has... Is this your due process argument? Yes, sir. And one prong of that is, you have before you, he's been offered a new trial. He's conceded that that's what ought to happen. His counsel had originally asked for that. Now they're asking for dismissal. He comes into court. His lawyer, one of them, moves to withdraw. She passes some piece of paper up to the court, which the court looks at. We have no clue what that was because the court passed it back to her and there's nothing in the record about it. And then his lawyer goes forward asking the court for a remedy that really doesn't exist in the law. Well, it may be uncommon to get, even assuming that the motion for dismissal was for a Brady violation. It's true that dismissals for discovery violations are rare, but that doesn't make them unavailable, Your Honor. But I think they're pretty much up there. They're way more than rare. I mean, you have to show basically that the government hid evidence. And in this case, the government clearly didn't hide evidence. They were still looking for material and turning it over after months after the verdict. But counsel, to recognize an ineffective assistance of counsel claim on direct appeal, it has to appear conclusively from the face of the record. I agree. That's the standard. Where on the face of the record is there a conclusive indication that counsel was ineffective? Your Honor, my argument on that is that it is per se ineffective to tell Mr. Fuller and file a motion and advise him to turn down a new trial after he's been convicted of murder and aid of racketeering and facing a life sentence. Now, obviously, the court will have to make that decision. The judge cautioned counsel not to do that. The government, even in their brief, concedes that under the Brady claim, a dismissal is not a remedy that's available. Could you point me in the record to where you say where that appears? Yes, ma'am. I think I can. I saw in the record that the defendant was opposed to a new trial. I think it's J-2409-10-2423. Well, the defendant said through his capsule he was opposed to a new trial. That was my point. Your formulation was that counsel advised him to turn down a new trial. Well, yes, ma'am. If you keep reading all through that, Ms. Stanton says, for reasons I can't disclose, we're going to go forward with the motion, and I cited that in my brief. No, I'm familiar with that. Thank you. So, what we know from the record is that, obviously, the lawyers filed the motion for a dismissal. They had originally asked for a new trial, and they persisted in that when the government recognizing the problem. This could all come out, I suppose, in a hearing on collateral review, but there can't be a rule that it's per se ineffective, like kind of a bird in the hand theory of ineffective assistance. Sometimes lawyers take calculated risks on behalf of their clients, and this lawyer, for whatever reason, and I suppose that could come out if we had a hearing, but appears to have made a judgment that, you know, she would go for broke. Let's get this thing dismissed, and there's a motion for prosecutorial misconduct. It's not just the Brady claim. I mean, I'm looking at where at least the district court's discussion of it. It's alleged promises to cooperating witnesses of specific sentence reductions, failure to correct incorrect testimony, belated incomplete discovery. It's all wrapped up. It's sort of your due process argument. When you look at everything that happened here, not just Brady, this was prosecutorial misconduct, and we should get this thing dismissed, and I just think sitting here on appellate review without a hearing, it is very hard to say that that was per se ineffective. It may have been a bad gamble, but that's not ineffective assistance. I understand, Your Honor. My time's up. I have some time in rebuttal, but again... You may respond to Judge Harris's question. You're absolutely correct that my assessment of this case after reading it is that it, and I said this in my brief, it just wasn't a good trial, a fair trial. It's nothing anybody should be proud of. The court's not proud of it. Prosecutors are not proud of it. They knew the man deserved a new trial. The judge said it was a sloppy mess. This does not appear to be going to the question about ineffective assistance of counsel. Did you have a response to that question? Yes, Your Honor. I believe that, again, I will repeat myself, turning down a new trial when you've been convicted, and the governments agreeing to it, to me, under the facts of this case, when you look at everything that had happened, is ineffective. Thank you. Thank you. And you do have some time for rebuttal. Thank you. Mr. Cook? May it please the Court, Richard Cook on behalf of the United States, and with me at counsel's table is Howard Zlotnick. I'll start with the ineffective assistance claim, unless the Court would like me to begin with another subject. As you would, however, wish to proceed, Your Honor. Okay. On the ineffective assistance claim, in evaluating the performance prong, the record before the Court doesn't permit the Court to know what advice was given to the defendant by the defense counsel, what reasoning was for that advice, and what instructions the defendant gave. All I have... In your answer here, someone, one of the other members of the panel, I think, already asked this, isn't this almost a prototypical case of why you need an evidentiary hearing, which is only available in a 2255? I agree with that completely. The standard from this Court, that the ineffectiveness has to conclusively appear, is simply not met in this case. The Court lacks a factual record, and also the perspective of the District Court, who presided over a lengthy trial in all these matters. And so, under Massaro, this is a simple and straightforward case for saying that ineffectiveness should not be decided now. I can turn to the continuance question. And under the standard for continuances, under Morris v. Slappy, District Courts are granted broad discretion on matters of continuances. And as this Court noted with Defense Counsel, the Jenks deadline that was the principal basis for the discovery, or the continuance request, was negotiated. Counsel was appointed more than almost a year in advance of trial. The government provided early disclosures of nearly 3,000 pages. That's Appendix 2376. And there is no, as Judge Agee was pointing out, no concrete showing of any kind of prejudice here from the disclosures. And I would note that the District Court Do you think you have a rather specific concession that there is no specific evidence of prejudice? That's correct. And there is a finding by the District Court during trial that he rejected complaints about a lack of preparation. And that's at Appendix page 1413 through 16 and 1658 through 62. And I would also point out at the end of the trial, and this is at Appendix 2067, the District Court said, in every case, you will always have tension. You're going to have give and take between counsel and the court. But I just want to commend both parties, counsel for Mr. Fuller and a vigorous representation of Mr. Fuller and the government and their vigorous representation of the United States. Both counsel, both sides did your job. So it's true at the end of the court, in ruling on the discovery motion, the District Court did describe this, the government as having created a sloppy mess. But then the court immediately followed that up by saying that the bottom line this court needs to focus on is whether we have some serious Brady violation here or whether we have the late disclosures of matters that are inconsequential. And as the court later went on to find, it was really the latter category because the undisclosed evidence was not admissible and would not lead to any admissible evidence. Can I ask you a question about the Brady ruling of the District Court? Yes. In terms of Brady, what is in front of us procedurally? Are the underlying merits of the Brady claim before us or is it the only thing before us whether this motion for dismissal based on prosecutorial misconduct was properly denied? Well, that's a good question. I think that the context in which this arose was the defendant asked for a particular remedy, dismissal. And now largely he's saying that dismissal is not the remedy they're seeking. And so the claim of the Brady violation is coming to this court in the context of the defendant asking for a form of relief that he expressly repudiated below. It just seems to me that what we have in front of us is an order from the District Court denying a motion to dismiss based on prosecutorial misconduct and that we don't even have to reach the merits of the Brady claim, all we have. It would be a sufficient ground for affirmance that nothing on this record rises to the level of the kind of extreme prosecutorial misconduct that would warrant dismissal. I would agree with that. That's really the only question in front of us, right? I agree with that. Well, as long as we're talking about Brady, though, I would like to ask, I mean, obviously the unusual fact about this case is that the government did offer a new trial. And I'm trying to make sense of that. I assume it is not standard practice for the government to offer a new trial when there has not been a Brady violation, just sort of ordinary discovery snafu. So what happened here? That's correct. I think that there's a couple of explanations for that. One is we do try and go beyond our Brady obligations. Another is that if there were going to be a retrial in the case, we would want to, it's far better for us to do that when people's memories are fresh. This is a case that is built off of the testimony of people who were there, observed things. And if you have to retry a case years later, you're at a much greater disadvantage. And so in order to get a fair and correct adjudication of this case, it's really a matter of, in part, managing risk. If we were going to face a retrial, we wanted to do it when we could do the best job of it. And we could do the best job of it at the time, close to when we tried that case. And so that would really be the principal motivation there. Unless the court has other questions, I'm happy to address anything. But we ask that you affirm your judgment. Thank you very much. Thank you. Just briefly with regard to the question that Judge Harris asked, I would direct the court to the record at Joint Appendix 2204 to 2206 and the new trial motion which the government drafted, which states, it's rather lengthy, but states in pertinent part, the government readily admits it unintentionally failed to meet its goal of providing full and timely disclosures of all pertinent materials within its possession, given the problematic status of the whole record of trial, the prosperity of disclosures, the severity of punishment mandated by the statutes. Parties agree and stipulate that the interest of justice requires the court to grant a new trial. So again, I understand and agree that technically you're not here to decide whether or not there was a Brady violation because I believe the government conceded, and it's plain on the record, that they did not turn over material. They say in that same record that the materials contain information pertinent to the issue of trial and after further investigation might lead to the defendant's discovery of either potentially admissible or impeachment evidence. That stuff that they turned over and found in September, two months after the verdict, is the material that's referenced about that motion. So I don't, whatever view the court takes of this case, I don't think that there is any issue that they didn't turn over the material. They've conceded it. They conceded it at the trial. They conceded it after the trial. They conceded it during the trial. Yeah, but failure to turn over doesn't equate to a Brady violation. You have more you have to show. This report specifically found it didn't do that. I understand, Your Honor, but my point is under a larger, my larger due process argument, the governments themselves said that the interest of justice required a new trial because they didn't turn over this material to the defense counsel, which I would get back to arguing that, you know, preparation is more than just reading what you have. It's reading everything, having a trial strategy, having the ability to understand how all the evidence fits together, and to take the position that you can be prepared when you don't have all the materials seems nonsensical to me. I mean, which is clear in this case, the defense lawyers did not have. So unless there's any other questions, that would be all my comments. Thank you very much, Mr. Woodward. And the court notes that you are also court appointed, and we would like to thank you for your representation and service. Thank you. We will come down and greet counsel and proceed directly to the last case.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris